IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE RESIDENCES AT RIVERBEND CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation, ELLEN BARRY, JOHN SIMON, PETER BROIDO, and WILLIAM AYLESWORTH, <br><br>              Plaintiffs, <br><br>    v. <br><br>CITY OF CHICAGO, a Municipal Corporation, <br><br>              Defendant. | Case No. 13 C 4007 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 30, 2013, Plaintiffs, the Residences at Riverbend Condominium Association ("Association") and individuals Ellen Barry, John Simon, Peter Broido, and William Aylesworth, filed the present seven-count Complaint against Defendant City of Chicago seeking declaratory and injunctive relief relevant to the development of three buildings with retail, office, residential, and hotel uses in an area known as Wolf Point in downtown Chicago. Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendant's motion and dismisses this lawsuit with prejudice.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). A plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## BACKGROUND

Accepting Plaintiffs' well-pleaded facts as true, the Association is a non-profit corporation that owns property at 333 N. Canal Street, Chicago, Illinois. (R. 1, Compl. ¶ 3.) The individual Plaintiffs — Ellen Barry, John Simon, John Broido, and William Aylesworth — are members of the Association and also own property at 333 N. Canal Street. (*Id*. ¶¶ 3, 4.) The dispute in this lawsuit pertains to a parcel of land 250 feet away from the Residences at Riverbend known as Wolf Point. (*Id.* ¶¶ 1, 3.) The origin of this dispute can be traced back to June 22, 1973, when the City enacted a zoning ordinance that created Planned Development No. 98 ("PD-98"). (*Id.* ¶ 7.) PD-98 affected the zoning for an undeveloped parcel of property adjoining the Chicago River near the Merchandise Mart and Apparel Center and divided the parcel into Subarea A and

Subarea B. (*Id.* ¶¶ 7, 8, 14.) The creation of Subarea B, which entails the Wolf Point property at issue in this lawsuit, allowed for the development of "Office Building, Retail, Residential, Parking Facilities and Related Uses." (*Id.* ¶ 15.) In the past 40 years, however, no one has built a structure for office, retail, or residential use on Wolf Point. (*Id*. ¶ 19.) Instead, the Wolf Point property is used for off-street parking. (*Id.*) At the same time, nearby areas, such as River North and the Fulton River Districts, experienced substantial improvement and development. (*Id.* ¶ 28.)

Plaintiffs maintain that the improvements to the nearby areas have been the impetus behind the considerable influx of people and businesses moving into the area. (*Id.* ¶¶ 30-32.) Specifically, Plaintiffs allege that the area's rapid growth has caused significant stress on the neighborhood's infrastructure. (*Id.* ¶ 30.) Plaintiffs point to the thousands of residential units built in the last ten years, the growing number of office tenants, the increasing population density in the area, the amount of new construction, and the announced plan to relocate Google/Motorola Mobility to a property adjacent to Wolf Point. (*Id*. ¶¶ 28-29.) Further, Plaintiffs contend that streets crawl during rush hour, traffic back-up creates hazards at railroad crossings, and that first responders cannot navigate to address emergencies. (*Id.* ¶¶ 30, 32.) In addition, Plaintiffs maintain that the construction of a 900,000 square foot office space on nearby Canal Street is underway and that a local manufacturing and distribution plant is scheduled to expand. (*Id.* ¶ 33.)

On May 30, 2012, the owner of Wolf Point filed for an amendment to PD-98 for the purpose of constructing three buildings. (*Id.* ¶ 36.) The owner submitted the application to the Office of the Zoning Administrator, which then transferred it to the City Clerk, who, in turn, placed the application on the City Council's agenda. (*Id.*) Next, the City Council then referred

3

the application to the City's Zoning Committee, which submitted the application to the Chicago Plan Commission for a public hearing. (*Id.*) On January 24, 2013, the Chicago Plan Commission held a public hearing concerning the application to amend the zoning of PD-98. (*Id.* ¶ 122.) The Chicago Plan Commission allowed comments and objections to the amendment at which time Plaintiffs and other objectors made statements. (*Id.* ¶¶ 125-126.) The Plan Commission immediately voted on the application and approved the amendment referring it back to the Zoning Committee for further hearing. (*Id.* ¶ 37.) Prior to the Zoning Committee's public hearing, Plaintiff Ellen Barry filed a detailed statement of the substantial defects of the application to amend PD-98 and also submitted a letter to the Chair of the Zoning Committee pointing out possible municipal code violations if the Zoning Committee passed the amended PD-98. (*Id.* ¶ 130.) On February 26, 2013, the Zoning Committee held its public hearing and approved the amendment before sending it back to the Chicago City Council. (*Id.* ¶¶ 38, 128, 131.) On March 11, 2013, the Chicago City Council approved Amended PD-98. (*Id.* ¶ 39.)

In their present Complaint, Plaintiffs allege that Amended PD-98 violates their procedural due process, substantive due process, and equal protection rights under both the United States and Illinois Constitutions. Specifically, in Counts I and IV, Plaintiffs allege that Amended PD-98 violates their procedural due process rights because the City denied them an adequate opportunity to present their opposition to Amended PD-98. In Counts II and V, Plaintiffs contend that Amended PD-98 violates their substantive due process rights presumably because Amended PD-98 is random and irrational. In Counts III and VI, Plaintiffs assert that Amended PD-98 violates their equal protection rights because they were required to comply with the various city ordinances and regulations while the owners of Wolf Property were exempt from such

restrictions.[1] Plaintiffs seek a permanent injunction barring the enforcement of Amended PD-98 in Count VII.

## ANALYSIS

"Both the Fourteenth Amendment of the Constitution of the United States, and Article One, Section Two of the Illinois Constitution provide that a person shall not be deprived of life, liberty, or property without due process of law." *Dargis v. Sheahan,* 526 F.3d 981, 989 (7th Cir. 2008) (citing U.S. Const. amend. XIV, § 1; Ill. Const. of 1970, art. I, § 2); *Hill v. Walker,* 241 Ill.2d 479, 485, 948 N.E.2d 601, 604, 350 Ill.Dec. 321, 324 (Ill. 2011) ("The due process clauses of the federal and Illinois Constitutions protect against the deprivation of liberty or property without due process of law."). As the United States Supreme Court teaches, "to determine whether due process requirements apply in the first place" courts "must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570-71, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Simply put, "the threshold question in any due process challenge is whether a protected property or liberty interest actually exists." *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013); *see also Jackson v. City of Chicago,* 975 N.E.2d 153, 170, 363 Ill.Dec. 351, 368 (1st Dist. 2012) ("The threshold question in analyzing whether a procedure violates due process is 'whether a constitutionally protected liberty or property interest is at stake.'") (citation omitted). Here, Plaintiffs maintain that the City has violated their protected property interests by amending PD-98

---

[1] Plaintiffs fail to address Defendants' arguments seeking to dismiss Plaintiffs' equal protection claims brought in Counts III and VI in their response brief, and thus Plaintiffs have abandoned these claims. *See Czarniecki v. City of Chicago,* 633 F.3d 545, 549 (7th Cir. 2011); *Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007).

to allow for the construction and development of three buildings at Wolf Point, which is 250 feet away from their residences.

A protected property interest is a legitimate claim of entitlement — not defined by the Constitution — but "by existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577; *see also Chicago Teachers Union, Local No. 1 v. Board of Educ. of City of Chicago,* 963 N.E.2d 918, 923, 357 Ill.Dec. 520, 525 (Ill. 2012) ("Of course, the federal Constitution does not create property interests."). More specifically, "where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement." *Chicago United Indus., Ltd. v. City of Chicago,* 669 F.3d 847, 851 (7th Cir. 2012) (citation omitted); *see also Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) ("A property interest of constitutional magnitude exists only when the state's discretion is 'clearly limited' such that the plaintiff cannot be denied the interest 'unless specific conditions are met.'") (citation omitted). It is well-established, for example, that a property owner whose real property is subject to land use regulation has a protected property interest under the Fourteenth Amendment. *See River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 166 (7th Cir. 1994).

Plaintiffs, however, do not own the property that is subject to Amended PD-98, namely, Wolf Point. Rather, they own property adjacent to Wolf Point. Plaintiffs, therefore, argue that their constitutionally protected property interest stems from Illinois Municipal Code, 65 ILCS 5/11-13-7. Section 11-13-7 provides that if a municipality has 500,000 or more people, the following is required to give proper notice for zoning variations or special uses: "(1) the applicant serve notice of the public hearing on the owners of record of all of the properties within

250 feet of the subject property either in person or by certified mail not more than 30 days before filing the application; (2) the applicant provide to the board of appeals a list of the names and addresses of those owners of record and a written statement certifying that he has complied with the requirements of section 11–13–7; and (3) the board of appeals send written notice to those owners of record not more than 30 days nor less than 15 days before the public hearing." *Musicus v. First Equity Group, LLC,* 980 N.E.2d 1233,1236-37, 366 Ill.Dec. 874, 877-78 (3d Dist. 2012).

      Plaintiffs reliance on Section 11-13-7 as providing an independent source of their constitutionally protected property rights is misplaced because the statute outlines the procedure for giving proper notice when applicants apply to amend a zoning ordinance and "[p]rocedural guarantees, whether relied on or not, do not establish a property interest protected under the Fourteenth Amendment's Due Process Clause." *Rujawitz v. Martin,* 561 F.3d 685, 688 (7th Cir. 2009). Put differently, a "statute which merely provides procedures to be followed does not include a substantive right." *Miyler v. Village of East Galesburg,* 512 F.3d 896, 898 (7th Cir. 2008). Instead, "[i]n order to give rise to a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion." *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989). Indeed, the Illinois Appellate Court, Second District, has concluded that a similar statutory provision for notice regarding zoning provisions, 65 ILCS 11/11-13-14, does not create a due process property interest for adjoining property owners. *See Wells v. Village of Libertyville,* 153 Ill.App.3d 361, 368, 505 N.E.2d 740, 745, 106 Ill.Dec. 193, 198 (2d Dist. 1987); *see also E & E Hauling, Inc. v. Pollution Control Bd.,* 116 Ill.App.3d 586, 595, 451 N.E.2d 555, 564, 71 Ill.Dec. 587, 596 (2d

Dist. 1983) ("Although the [Illinois environmental protection act] gives all persons a right to a hearing before the grant of a permit application, this does not create a property right."). Accordingly, Plaintiffs have not established that they have a constitutionally protected property interest in the first instance. *See Roth,* 408 U.S. at 570-71; *Suburban Downs, Inc. v. Illinois Racing Bd.,* 316 Ill.App.3d 404, 413, 735 N.E.2d 697, 704, 249 Ill.Dec. 93, 100 (1st Dist. 2000) (absent a "claim to entitlement ... it cannot be said that the applicants had a recognizable property right within the meaning of the federal or state constitution.").

The Seventh Circuit's decision in *Muscarello v. Ogle County Bd. of Comm's,* 610 F.3d 416, 423 (7th Cir. 2010), further supports that Plaintiffs have failed to allege a protected property interest for due process purposes. In *Muscarello*, the plaintiff property owner sued the Ogle County Board of Commissioners arguing that the County Board denied her due process after the approval of a special use permit for the construction of windmills on property adjacent to the plaintiff's property. *See id.* at 418-20. In analyzing the plaintiff's due process theory of liability, the Seventh Circuit concluded that the plaintiff did not have a protectable property interest in the lifting of zoning restrictions on another's property because she only described a speculative property interest. *See id.* at 423; *see also Roth,* 408 U.S. at 577 ("To have a property interest ... a person clearly must have more than an abstract need or desire for it" — it must be "more than a unilateral expectation for it."). The *Muscarello* panel further concluded that "even if [plaintiff] did have a protectable property interest, the process due in a zoning case is minimal and normally must be pursued in state courts." *Id.* at 423 (citing *River Park,* 23 F.3d at 167).

Moreover, other Illinois cases further support the conclusion that Plaintiffs do not have a protected property interest at stake in this zoning matter. *See, e.g., Petersen v. Chicago Plan*

*Comm'n of City of Chicago,* 302 Ill.App.3d 461, 707 N.E.2d 150, 155, 236 Ill.Dec. 305, 310 (1st Dist. 1998). In *Petersen*, the Museum of Science and Industry sought the Chicago Plan Commission's approval to expand and renovate its facilities. *See id.* at 462. The plaintiffs, who were individuals and organizations, objected to the museum's expansion plan, including the plan's use of park land for the museum's expansion. *See id.* at 465. Despite their objections, the Plan Commission unanimously approved the museum's plan to expand. *See id.* On appeal from the Circuit Court's order affirming the Plan Commission's decision, the Illinois Appellate Court, First District, concluded that the plaintiffs did not have a constitutionally protected property interest in the museum's expansion and renovation for purposes of their federal and Illinois due process claims because "[w]hile their interest as citizens entitles them to enjoy the park and to desire that it be preserved, it does not rise to the level of a protectable interest such as one's interest in property." *Id.* at 467.

Further, despite Plaintiffs' allegations to the contrary, Illinois courts do not recognize property values, air, or light as constitutionally protected property interests. *See Groenings v. City of St. Charles,* 215 Ill.App.3d 295, 307, 574 N.E.2d 1316, 1324, 158 Ill.Dec. 923, 931 (2d Dist. 1991) (increase in value of property, standing alone, is an expectancy, not an entitlement); *American Nat'l Bank & Trust Co. v. City of Chicago,* 209 Ill.App.3d 96, 119, 568 N.E.2d 25, 40, 154 Ill.Dec. 25, 40 (1st Dist. 1990) (City's nuisance guidelines did not expand protectable property interests to include the free flow of air and light).

Finally, Plaintiffs' argument that Illinois courts "regularly and routinely" consider adjacent landowners' challenges to zoning laws does not save the day because "the process due in a zoning case is minimal and normally must be pursued in state courts." *See Muscarello,* 610

F.3d at 423. In other words, the reason that Illinois courts have considered neighboring landowners' zoning challenges is because state law permits parties to challenge the validity of a zoning ordinance in state court. *See River Park,* 23 F.3d at 167 ("A person contending that state or local regulation of the use of land has gone overboard must repair to state court."); *see, e.g., Rodriguez v. Henderson,* 217 Ill.App.3d 1024, 1030, 578 N.E.2d 57, 61, 160 Ill.Dec. 878, 882 (1st Dist. 1991). Plaintiffs, for example, could have sought administrative review in the Circuit Court of Cook County, like the *Petersen* plaintiffs did. *See id.* at 463; *see also Lapp v. Village of Winnetka,* 359 Ill.App.3d 152, 166, 833 N.E.2d 983, 995, 295 Ill.Dec. 777, 789 (1st Dist. 2005). In a similar vein, Plaintiffs' argument that Amended PD-98 violates the City's other ordinances and plans does not establish a constitutional violation because "a unit of state or local government does not violate the federal Constitution just because it violates a state or local law." *Garcia v. Kankakee County Hous. Auth.,* 279 F.3d 532, 535 (7th Cir. 2002); *see also River Park,* 23 F.3d at 167 ("[f]ailure to implement state law violates that state law, not the Constitution [and] the remedy lies in state court.").

      In sum, Plaintiffs — who are adjacent property owners to Wolf Point — cannot establish that they have a constitutionally protected property interest. Because Amended PD-98 does not deprive Plaintiffs of a constitutionally protected property interest, the Court grants the City's motion to dismiss with prejudice because, under the circumstances, Plaintiffs have no legal claim as a matter of law.

## CONCLUSION

For these reasons, the Court grants Defendant's Rule 12(b)(6) motion and dismisses this lawsuit in its entirety.

**Dated:** November 19, 2013

              **ENTERED**

              _____
              **AMY J. ST. EVE**
              **United States District Court Judge**